**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
TRANSPORT WORKERS UNION OF
AMERICA, LOCAL 252, AFL-CIO,

                Petitioner,         **MEMORANDUM OF**
                                                **DECISION AND ORDER**
        -against-         12-CV-6109 (ADS)(AKT)

VEOLIA TRANSPORTATION SERVICES,
INC., d/b/a NASSAU INTER-COUNTY
EXPRESS BUS,

                Respondent.
----------------------------------------------------------X

**APPEARANCES:**

**Colleran, O'Hara & Mills, LLP**
*Attorneys for the Petitioner*
1225 Franklin Avenue, Suite 450
Garden City, NY 11530
    By:  Edward J. Groake, Esq.
           Jennifer D. Weekley, Esq.
           Michael Dennis Bosso, Esq., Of Counsel

**McMahon Berger, PC**
*Attorneys for the Respondent*
2730 North Ballas Road, Suite 200
Saint Louis, MO 63131
    By:  James N. Foster, Esq.
           Michelle Cain, Esq., Of Counsel

**Rivkin Radler LLP**
*Attorneys for the Respondent*
926 Rxr Plaza
Uniondale, NY 11556
    By:  John K. Diviney, Esq.
           Scott Green, Esq., Of Counsel

**SPATT, District Judge**.

       On December 12, 2012, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the

"FAA") and the Labor Management Relations Act, 29 U.S.C. § 185, et seq. (the "LMRA"), the

Petitioner Transport Workers Union of America, Local 252, AFL-CIO (the "Petitioner") commenced this action against the Respondent Veolia Transportation Services, Inc., d/b/a Nassau Inter-County Express Bus (the "Respondent") by filing a petition to compel arbitration. Presently pending before the Court is (1) the Petitioner's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P. 56") and (2) the Respondent's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.

For the following reasons, the Petitioner's motion for summary judgment is granted and the Respondent's cross-motion for summary judgment is denied.

## I. BACKGROUND

The Respondent operates a fixed-route bus service in Nassau County known as the "Nassau Inter-County Express Bus." The Petitioner is a labor union that represents bus drivers, mechanics and others who are employed by the Respondent.

The Petitioner and the Respondent are parties to a Collective Bargaining Agreement (the "CBA"), which is effective from January 1, 2012 through April 15, 2017. The CBA "constitutes the entire Agreement between the parties and [ ] there are no other agreements, oral or written, relating to the terms and conditions of employment of the employees other than the provisions contained [within the CBA] or attached [to the CBA] and made a part [of the CBA]." (Groake Decl., Exh. A.)

Under the provisions of the CBA, "[t]he Impartial Arbitrator shall have the authority to decide all grievances and complaints but he shall not have the authority to render any opinion or make any award, (i) which amends, modifies, or changes [the CBA] or any of its terms; or (ii) limiting or interfering in any way with the [Respondent's] managerial responsibility to run its transit facilities safely, efficiently, and economically." (Groake Decl., Exh. A.) Of importance,

the CBA defines "the term 'grievance' or 'complaint' . . . [to] mean[ ] any dispute arising out of the interpretation or application of the provisions of, or attachments to [the CBA]." (Groake Decl., Exh. A.)

By letter dated June 7, 2012, the Petitioner's counsel requested that four separate disciplinary grievances and two separate contract grievances all be presented and heard at one pre-scheduled arbitration before the Impartial Arbitrator, Howard Edelman ("Arbitrator Edelman"). The arbitration for these six different grievances was scheduled at the Petitioner's office for July 17, 2012.

Thereafter, on July 12, 2012, the Respondent's Counsel contacted another Impartial Arbitrator, Richard Horn ("Arbitrator Horn"). The Respondent sought to arbitrate one of the six grievances that the Petitioner had scheduled to be heard by Arbitrator Edelman in July 17, 2012 before Arbitrator Horn. Specifically, the Respondent, sought to have this one grievance arbitrated in August of 2012 before Arbitrator Horn instead of Arbitrator Edelman.

The Respondent claimed that the parties had agreed to present only one grievance per arbitration per month. The Petitioner disputed the Respondent's claim stating that there was no such agreement. The Petitioner also argued that arbitrating just one grievance a month was inefficient; expensive; and detrimental to those employees who had been terminated and were awaiting resolution of their grievances so they could possibly return to work.

On July 12, 2012, Arbitrator Edelman held a conference call with the parties so as to determine what grievances he would be hearing at the scheduled July 17, 2012 arbitration. Both the Petitioner and the Respondent shared their positions on the issue of whether multiple grievances could be heard on one hearing day before the same arbitrator. However, neither party formally submitted any evidence on this issue.

3

Arbitrator Edelman explained that he could not force the Respondent to present grievances it did not agree to present. In addition, Arbitrator Edelman advised that he did not have the power to determine the issue of whether multiple grievances could be heard on one hearing day before the same arbitrator, as the issue had not been formally submitted to him by the parties. He further advised the parties to formally submit the issue to another arbitrator. Arbitrator Edelman issued no formal written ruling with respect to this issue of whether an arbitrator could hear multiple grievances during the same arbitration hearing.

On July 17, 2012, Arbitrator Edelman was scheduled to hear only one grievance concerning the discharge of employee Alicia Campbell ("Campbell"), but this grievance was settled without the need for an arbitration hearing. However, because Campbell's discharge was the only grievance the Respondent had agreed to be presented at that day's arbitration hearing, no other additional grievances were heard at that time.

On November 9, 2012, following Arbitrator Edelman's advice, the Petitioner sent a Notice and Demand for Arbitration to the Respondent seeking arbitration before Impartial Arbitrator Carol Wittenberg ("Arbitrator Wittenberg") on a pre-scheduled hearing date of November 27, 2012 concerning the following dispute:

> Whether the [Respondent's] failure and refusal to place all grievances disputes and complaints before the impartial arbitrator on agreed upon dates for hearings by unilaterally and arbitrarily implanting a "one case per day" rule, thereby creating an inefficient and ineffective process for arbitrating issues in a timely fashion is in violation of Article [II][.]

(Groake Decl., Exh. F.) In addition, the Petitioner requested that a second dispute relating to the discharge of employee Caesar Montoya ("Montoya") also be heard on November 27, 2012 before Arbitrator Wittenberg.

4

By letter dated November 16, 2012, the Respondent's counsel notified the Petitioner that it would not agree to arbitrate the dispute as to whether the Respondent was permitted under the CBA to limit arbitration hearings to one case per day on the grounds that (1) Arbitrator Edelman had already arbitrated the dispute during the July 12, 2012 conference call and (2) the Respondent required further information in order to fully understand the issue of which the Petitioner was complaining. The Respondent sent a copy of the November 16, 2012 letter to Arbitrator Wittenberg.

On December 4, 2012, Arbitrator Wittenberg sent an email correspondence to the parties advising them that she "[could] only hear and decide cases that [they jointly place[d] before [her]." (Groake Decl., Exh. H.) She suggested they continue with scheduling an arbitration hearing for Montoya's discharge dispute only and offered February 21, 2013 as a possible date. In an email response, also dated December 4, 2012, the Petitioner's counsel advised Arbitrator Wittenberg that it was willing to proceed with the Montoya case, but would seek "an Order and Judgment compelling [the] arbitration [of the 'more than one arbitration a day' grievance] before [Arbitrator Wittenberg]. (Groake Decl., Exh. H.) Accordingly, eight days later, on December 12, 2012, the Petitioner initiated this lawsuit to compel the Respondent to arbitrate before an impartial arbitrator the issue of whether the provisions of the CBA required or prohibited more than one grievance being arbitrated per session.

On June 7, 2013, at a discovery status conference before United States Magistrate Judge A. Kathleen Tomlinson, the parties agreed that the only issue before the Court was the arbitrability of the dispute of whether multiple grievances could be heard at single, prescheduled arbitration hearing days. In other words, the parties were only asking this Court to resolve whether the CBA's arbitration agreement required the parties to place before an impartial

5

arbitrator their dispute concerning multiple grievances being held on one day. The parties agreed that the Court may determine as a matter of law whether the CBA's arbitration agreement requires the parties to arbitrate their dispute before an impartial arbitrator. The Court notes that the parties do not seek the Court to decide whether or not multiple grievances should be heard per day before the same arbitrator, but only whether they are required to arbitrate this question under the provisions of the CBA.

Accordingly, after conferring with the undersigned, Judge Tomlinson ordered that the parties could proceed forward with their cross-motions for summary judgment without exchanging Rule 56.1 statements and a pre-motion conference, as is generally required by this Court's Individual Rules.

## II. DISCUSSION

### A. Legal Standard

In order to grant a motion to compel arbitration, the moving party must meet the summary judgment standard pursuant to Fed. R. Civ. P. 56. See Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) ("In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment.") (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003)); see also McAllister v. Ct. Renaissance Inc., No. 3:10cv1488 (WWE), 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011); Env. Energy Services, Inc. v. Cylenchar Ltd., Civil Action No. 3:11–CV–0039 (JCH), 2011 WL 4829851, at *2 (D. Conn. Oct. 12, 2011); Brown v. St. Paul Travelers Companies, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) ("'[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability,' regardless of how the party that favors arbitration styles its motion."); Santos v. GE Capital, 397 F. Supp. 2d 350, 353 (D. Conn.

2005) ("When a motion to dismiss is premised upon a request to compel arbitration, however, the Court 'applies a standard similar to that applicable for a motion for summary judgment.'") (quoting Bensadoun, 316 F.3d at 175).

It is well-settled that summary judgment under Fed. R. Civ. P. 56 is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam); Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994)

7

(citations omitted). "[T]he trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to decid[e] them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Id. at 1224.

On a motion to compel arbitration, this Court must first determine whether there is a valid agreement to arbitrate between the parties. Roller v. Centronics Corp., No. 87 CIV. 5715 (JFK), 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989). The moving party has the initial burden of showing that an agreement to arbitrate exists. Id. If there is a valid agreement, the Court must then determine whether the particular dispute falls within the scope of the arbitration clause. Unique Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund, No. 07 Civ.1951(WCC), 2007 WL 4267632, at *10 (S.D.N.Y. Nov. 30, 2007). If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." Id. Of importance, "[w]hether a CBA creates a duty for the parties to arbitrate a particular claim is an issue for judicial determination." Vera v. Saks & Co., 335 F.3d 109, 116–17 (2d Cir. 2003)

The Court must also keep in mind certain public policy concerns when deciding whether to compel arbitration. Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. In this regard, the FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements, Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), and reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract," AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742

8

(2011) (internal quotation marks and citations omitted). See also Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) ("[T]he FAA was enacted to replace judicial indisposition to arbitration, and is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution.") (internal quotation marks and citations omitted). In fact, the Second Circuit has said that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted).

**B. As to the Whether the Respondent Should be Compelled to Arbitrate**

In this case, the CBA broadly provides that "the Impartial Arbitrator shall have the authority to decide all grievances and complaints[,]" including "any dispute arising out of the interpretation or application of the provisions of, or attachments to [the CBA]." (Groake Decl., Exh. A.) Moreover, the CBA states that "[i]f the requested arbitration arises out of interpretation or application of the provisions of [the CBA], the request for such arbitration by the [Respondent] or by the [Petitioner], as the case may be, shall be made within seven (7) days after such dispute arises." This clause also indicates that the parties have agreed to arbitrate all disputes concerning the interpretation and application of the provisions of the CBA. (Groake Decl., Exh. A.) Accordingly, as an initial matter, the Court finds that a valid and broad agreement does exist between the parties to arbitrate disputes involving the interpretation and application of the CBA. See, e.g., Vera, 335 F.3d at 117 (2d Cir. 2003) ("The language in the CBA, requiring arbitration of '[a]ny dispute, claim, grievance or difference arising out of or relating to this Agreement which the Union and the Employer have not been able to settle,' constitutes a broad arbitration clause.") (citation omitted) (internal brackets in original).

Having determined that a valid agreement to arbitrate exists between the parties, the Court must now determine whether the dispute the Petitioner seeks to arbitrate falls within the scope of that provision. In this regard, "[w]hen a CBA contains an arbitration clause, 'there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" Vera, 335 F.3d at 117 (2d Cir. 2003) (quoting Transit Mix Concrete Corp. v. Local Union No. 282, 809 F.2d 963, 968 (2d Cir. 1987)); see also Unique Woodworking, Inc. v. New York City Dist. Council of Carpenters' Pension Fund, 07 CIV. 1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007) (citing Rochdale Vill., Inc v. Pub. Serv. Employees Union, Local No. 80, 605 F.2d 1290, 1295 (2d Cir. 1979)) ("[A]rbitration should not be denied unless the arbitration clause is positively not susceptible of an interpretation that covers the dispute.").

In the Court's view, it is clear that the dispute at issue here – that is, whether the Respondent is violating the terms of the CBA by refusing to allow multiple grievances to be heard at the same arbitration hearing – involves a question pertaining to the interpretation and application of the CBA. In other words, the parties disagree as to how the CBA should be interpreted and applied when it comes to scheduling grievances to be heard by an arbitrator. This falls squarely within the scope of the CBA's arbitration clause, and thus, arbitration is appropriate here.

The Respondent attempts to counter the Petitioner's request to compel arbitration by contesting the underlying merits of the Petitioner's grievance. Specifically, the Respondent argues that it did not consent to arbitrate this dispute

10

> because the CBA, by its plain language, does not provide for arbitration of disputes about the process of holding arbitration hearings, and it does not permit the holding of more than one hearing before one arbitrator on one day. The dispute does not arise out of any "interpretation or application" of the provisions of the Agreement because there is no provision, including the arbitration provision, which compels the result the [Petitioner] seeks.

(Respondent Mem., pg. 5, emphasis removed.) In this way, the Respondent raises the merits of the dispute because it essentially asks the Court to find that the arbitration clause does not apply to this dispute on the ground that there is no merit to the Petitioner's interpretation of the CBA that multiple grievances can be heard before the same arbitrator on the same day.

However, the question before the Court is not whether the CBA requires or prohibits the hearing of multiple grievances on the same day before a single arbitrator. Rather, the question is simply whether the dispute over hearing multiple grievances per day falls within the scope of the CBA's arbitration agreement so that the Respondent should be compelled to arbitrate it with the Petitioner before an impartial arbitrator. Thus, the Court need not explore the merits of the underlying dispute to resolve the issue of arbitrability. Indeed, it is settled law that the Court may not consider arguments pertaining to the potential merits of the underlying dispute when resolving a motion to compel arbitration. See Vera, 335 F.3d at 117 (quoting Transit Mix Concrete Corp, 809 F.2d at 967–68) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.") (internal brackets in original); Dodge Hyundai of Paramus v. United Welfare Fund, Welfare Div., 11-CV-979 ARR, 2011 WL 4356373, at *3 (E.D.N.Y. Sept. 16, 2011) (same).

The Respondent also opposes arbitration on the grounds that (1) the Petitioner's request to arbitrate the dispute was allegedly untimely and did not comply with the CBA's grievance procedures; (2) the dispute is allegedly not ripe; and (3) based on the July 12, 2012 conference

11

call with Arbitrator Edelman and the December 4, 2012 email from Arbitrator Wittenberg, that the dispute has allegedly already been decided in the Respondent's favor. The Court finds that these are issues for the arbitrator to decide, not the Court. The Tile Setters & Tile Finishers Union of New York & New Jersey v. Speedwell Design/BFK Enter., LLC, 06-CV-5211(KAM), 2009 WL 922021, at *8 (E.D.N.Y. Mar. 31, 2009) ("Beyond the gateway questions of whether the parties have agreed to arbitrate under the agreement, and the scope of that agreement, questions relating to the procedures for arbitration and substantive defenses to the arbitration are for the arbitrator to decide, not the court."); see also Pontier v. U.H.O. Mgmt. Corp., 10 CIV. 8828 RMB, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) ("Matters reaching the merits of the dispute—including [the] [d]efendants' res judicata argument . . .—are to be resolved by the arbitrator."); Ace Am. Ins. Co. v. Huntsman Corp., 255 F.R.D. 179, 210 (S.D. Tex. 2008) ("[I]f it is determined that arbitration is warranted, questions of the ripeness of the underlying disputes between [the parties] ultimately may be determined by the arbitrators.") (collecting cases); N. Ferry Co., Inc. v. Local 333, United Marine Div., Int'l Longshoremen's Ass'n, AFL-CIO, 338 F. Supp. 2d 430, 434 (E.D.N.Y. 2004) (citing Schweizer Aircraft Corp v. Local 1752, Int''l Union United Automotive, Aerospace and Agric. Implement Workers of Am., 29 F.3d 83, 88 (2d Cir. 1994)) ("[T]he issue of timeliness of the demand is for the arbitrator and not for the court. The Second Circuit has held clearly that the question of whether or not time requirements under a CBA have been met are for the arbitrator to decide.").

In sum, the broad arbitration clause in the CBA calls for an impartial arbitrator to resolve the dispute of whether the CBA requires or prohibits multiple grievances to be heard by a single arbitrator at the same arbitration hearing. Thus, the Petitioner's Fed. R. Civ. P. 56 motion for

summary judgment to compel arbitration is granted, while the Respondent's Fed. R. Civ. P. 56 motion for summary judgment opposing arbitration is denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Respondent's Fed. R. Civ. P. 56 motion for summary judgment is denied; and it is further

**ORDERED,** that the Petitioner's Fed. R. Civ. P. 56 motion for summary judgment is granted. Within forty-five days of the date of this Order, the parties are directed to arbitrate before Arbitrator Wittenberg the dispute of whether the CBA requires, permits or prohibits multiple grievances to be heard by a single arbitrator during the same arbitration hearing; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
March 18, 2014

                                          ___*/s/ Arthur D. Spatt*____
                                            ARTHUR D. SPATT
                                       United States District Judge